## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of:                                        Case No. **07-00771-lmj7**

**Donald C. Braathun,**                                    [UNPUBLISHED]

         Debtor

### MEMORANDUM OF DECISION
### (date entered on docket: April 4, 2011)

The United States Trustee for Region 12 ("U.S. Trustee") filed a motion to dismiss this Chapter 7 case pursuant to 11 U.S.C. section 707(b)(1). That section permits a court to dismiss a Chapter 7 case brought by an individual debtor with primarily consumer debts if the court finds that allowing the case to proceed as a liquidation case would be an abuse of the provisions governing Chapter 7. Relying on subparagraph (A) of section 707(b)(2), the U.S. Trustee contends that a presumption of abuse arises because Debtor Donald C. Braathun ("Debtor") does not pass the statutory means-test if his non-filing spouse's income and marital adjustment are included in Official Form 22A (Chapter 7 Statement of Current Monthly Income and Means-Test Calculation) ("Form 22A"). Relying alternatively on subparagraphs (A) and (B) of section 707(b)(3), the U.S. Trustee argues that abuse exists based either on Debtor's bad faith in seeking relief under Chapter 7 or on the totality of the circumstances of Debtor's financial situation. Regarding the former ground, the U.S. Trustee points to Debtor's failure to include his non-filing spouse's income and marital adjustment on Form 22A and reasons that omission results in Debtor subsidizing the non-filing spouse's expenses to the detriment of his unsecured creditors. Regarding the latter

ground, the U.S. Trustee maintains that Debtor has the ability to pay 86% of his general

unsecured debt—again, when his non-filing spouse's income and expenses are taken

into account.  Debtor disagrees.  Having reviewed the record and having considered the

arguments of the parties, the Court enters its decision in favor of the Debtor.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1334 and

the standing order of reference entered by the United States District Court for the

Southern District of Iowa.  This is a core matter under 28 U.S.C. section 157(b)(2)(A)

and (O).

## APPLICABLE STATUTORY PROVISIONS

11 U.S.C. section 707(b)(1) provides in relevant part that:

After notice and a hearing, the court, . . . on a motion by the United States trustee, . . . , may dismiss a case filed by an individual debtor under this chapter whose debts are **primarily consumer debts**, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1) (emphasis added).  The Code defines "consumer debt" as "debt

incurred by an individual **primarily for a personal, family, or household purpose**."

11 U.S.C. § 101(8) (emphasis added).

11 U.S.C. section 707(b)(2)(A), the "means-test" calculation, provides that:

(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if **the debtor's current monthly income**[1] reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of-

---

[1] With respect to the definition of current monthly income, 11 U.S.C. section 101(10A) provides that:

The term "current monthly income"—
(A) means **the average monthly income from all sources that the debtor receives** (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, **derived during the 6-month period ending on**--
(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or

(II) $10,000.

(ii)(I) The debtor's monthly expenses shall be **the debtor's applicable monthly expense amounts specified under** *the National Standards and Local Standards*, and **the debtor's actual monthly expenses for the categories specified as** *Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief*, **for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent**.  Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor.  Notwithstanding any other provision of this clause, **the monthly expenses of the debtor** shall not include any payments for debts.  In addition, **the debtor's monthly expenses** shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 of the Family Violence Prevention and Services Act, or other applicable Federal law.  The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court.  In addition, if it is demonstrated that it is reasonable and necessary, **the debtor's monthly expenses** may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

(II) In addition, **the debtor's monthly expenses** may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

(III) In addition, for a debtor eligible for chapter 13, **the debtor's monthly expenses** may include the actual administrative expenses of

---

(ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); **and**

(B) includes **any amount paid by any entity other than the debtor** (or in a joint case the debtor and the debtor's spouse), **on a regular basis for the household expenses of the debtor or the debtor's dependents** (and in a joint case the debtor's spouse if not otherwise a dependent) but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title  18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

11 U.S.C. § 101(10A) (emphasis added).

administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.

(IV) In addition, the **debtor's monthly expenses** may include the actual expenses for each dependent child less than 18 years of age, not to exceed $1,500 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

(V) In addition, **the debtor's monthly expenses** may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

(iii) **The debtor's average monthly payments on account of secured debts** shall be calculated as the sum of—

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

(iv) **The debtor's expenses for payment of all priority claims** (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

11 U.S.C. § 707(b)(2)(A) (emphasis added).

11 U.S.C. section 707(b)(7), the "safe harbor" from the means-test calculation,

provides that:

(A) No judge, United States trustee (or bankruptcy administrator, if any), trustee, or other party in interest may file a motion under paragraph (2) if **the current monthly income of the debtor**, including a veteran (as that term is defined in section 101 of title 38), **and the debtor's spouse combined**, as of the date of the order for relief when multiplied by 12, is equal to or less than—

(i) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

> (ii) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>
> (iii) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $ 525 per month for each individual in excess of 4.
>
> (B) **In a case that is not a joint case, current monthly income of the debtor's spouse shall not be considered for purposes of subparagraph (A) if—**
>
> (i)(I) the debtor and the debtor's spouse are separated under applicable nonbankruptcy law; or
>
> (II) the debtor and the debtor's spouse are living separate and apart, other than for the purpose of evading subparagraph (A); and
>
> (ii) the debtor files a statement under penalty of perjury—
>
> (I) specifying that the debtor meets the requirement of subclause (I) or (II) of clause (i); and
>
> (II) disclosing the aggregate, or best estimate of the aggregate, amount of any cash or money payments received from the debtor's spouse attributed to the debtor's current monthly income.

11 U.S.C. § 707(b)(7) (emphasis added).

As an alternative to the "means-test," 11 U.S.C. section 707(b)(3) provides that:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3).

## DISCUSSION

In accordance with the applicable statutory provisions, the U.S. Trustee bears the

burden of proving by a preponderance of the evidence that Debtor's scheduled debts

are primarily consumer debts, that the safe harbor provision does not apply, and that

either a presumption of abuse arises upon application of the means-test calculation[2] or

---

[2] If the U.S. Trustee establishes that the means-test applies, 11 U.S.C. section 707(b)(2)(B)(i) provides that:

a finding of abuse is warranted under a bad faith filing or a totality of the circumstances analysis. With respect to the content of the motion to dismiss, Rule 1017(e)(1) of the Federal Rules of Bankruptcy Procedure states that "[t]he party filing the motion shall set forth in the motion all matters to be considered at the hearing. In addition, a motion to dismiss under § 707(b)(1) and (3) shall state with particularity the circumstances alleged to constitute abuse." Fed. R. Bankr. P. 1017(e)(1).

I. The Scheduled Debts Are Not Primarily Consumer Debts.

On March 19, 2007 Debtor filed a voluntary Chapter 7 petition. Under the "Nature of Debts" section on the first page of the petition, Debtor checked the box that indicated his "[d]ebts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as 'incurred by an individual primarily for a personal, family, or household purpose.'" (Docket No. 1.) On Schedule D (Creditors Holding Secured Claims), he listed one mortgage debt in the amount of $54,061.00 and one vehicle debt in the amount of $14,014.00. Debtor represented that he incurred the mortgage debt in 2003 and the vehicle debt in 2005. On Schedule E (Creditors Holding Unsecured Priority Claims), he listed no debts. On Schedule F (Creditors Holding Unsecured Nonpriority Claims), he listed eleven debts totaling $29,971.96. Nine of the debts were related to credit card use in 1996, 1998, 1999, 2001, 2002 and 2003 and totaled $27,716.59. The other debts were for a 2000 telephone expense in the amount of $414.00 and a 2006

---

In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

11 U.S.C. § 707(b)(2)(B)(i). The debtor bears the burden of proving "special circumstances." See 11 U.S.C. § 707(b)(2)(B)(ii)-(iv) (setting forth the requirements a debtor must satisfy).

retirement plan loan in the amount of $1,841.37.  Accordingly, in the general allegations portion of his motion, the U.S. Trustee states that "[b]ased on a review of Debtor's Schedules D, E & F, their [sic] obligations are primarily consumer debts.  Debtor's nonpriority unsecured debts total $29,971.96."  (Docket Number 14, paragraph 4.)  In the means-test portion of his motion, the U.S. Trustee "submits that Debtor's obligations are primarily consumer debts.  On the first page of their [sic] Voluntary Petition, Debtor checked the box indicating that his debts were 'Consumer/Non-Business.'  Debtor's Schedules (D, E and F) also reflect that his debts are primarily consumer debts." (Docket Number 14, paragraph 10.)

In his original objection to the motion to dismiss, Debtor "admits that the non-priority unsecured debt is in the sum of $29,971.96 but denies that the obligations are primarily just consumer debts" but then "admits the debts are consumer/non-business debts." (Docket No. 17,  paragraphs 4 and 10 respectively.)  In his amended objection, Debtor expanded his first response by adding that "a significant portion of the credit card debt was incurred by Debtor in his prior employment as a machinery sales person as the debt was for travel and work related expenses that he was not able to pay due to his position being terminated."  (Docket No. 23, paragraph 4.)  He changed his second response to a denial and explained that "the credit card debts are business debt by the Debtor which he incurred primarily to pay for travel expenses and meals while working as a machinery sales person and were business related."  (Docket No. 23, paragraph 10.)

During direct examination by the attorney for the U.S. Trustee, Debtor agreed that he incurred the scheduled mortgage debt in October 2006[3] and reported that the purpose of the loan was "[t]o consolidate some bills." (Tr. 37, l. 1.) During subsequent direct examination by his attorney, Debtor responded affirmatively when asked if the scheduled mortgage debt and vehicle debt were consumer debts but then proceeded to state that he incurred the mortgage debt because "I was trying to consolidate some of those debts." (Tr. 41, ll. 3-4.) He apparently had incurred a similar mortgage loan for the same purpose on at least one other occasion and rolled the balance of that loan into the 2006 loan.[4] He did not recall the balance amount of the prior loan. Though Debtor agreed that the mortgage debt also covered home improvement or remodeling expenses, he was not asked and did not otherwise comment regarding how much of the mortgage debt related to that consumer purpose.

During direct examination by his attorney, Debtor responded affirmatively when asked if most of his credit card debt was related to business debt he had incurred in prior years. He identified a $743.99 Sears debt, a $248.00 Target National Bank debt and the $1,841.37 retirement loan debt as his only consumer debts on Schedule F.[5] The total of those amounts is $2,833.36.

---

[3] The U.S. Trustee's attorney specifically referenced "October 2006" in his question. (Tr. 36, l. 22.) Debtor's attorney likewise asked Debtor a question suggesting that his client incurred the mortgage debt in "2006, when you acquired the home equity loan at Grand Story Bank." (Tr. 42, ll. 21-22.) Neither attorney sought to clarify if the date of the scheduled mortgage debt was in error.

[4] The record does not reveal if the prior mortgage loan was incurred in 2003.

[5] Despite making those statements, Debtor testified apparently in reference to the remaining debt on Schedule F that "[m]ost of the rest would be consumer-related." (Tr. 42, l. 20.) The Court's impression at the time of the October 19, 2007 hearing was that Debtor misstated what he meant to say and that his attorney, who had been interrupted in his questioning by that comment, had not heard what his client had said.

The record described above seemingly supports a finding that the scheduled vehicle debt in the amount of $14,014.00 is a consumer debt. Likewise, the record seemingly supports a finding that scheduled unsecured debts in the amount of $2,833.36 are consumer debts. The total of those amounts is $16,847.36. The record, however, is not clear regarding how much of the scheduled mortgage debt in the amount of $54,061.00 should be deemed debt incurred primarily for a personal, family or household purpose. Even if the Court were willing to engage in speculation about the distribution of that dollar amount between consumer and business purposes, the record does not provide the Court with any suitable facts upon which to base such speculation.

Though the record seemingly supports a finding that scheduled unsecured debts in the amount of $27,138.60 are business debts, the Court parenthetically notes that it is left wondering why those debts that predate the scheduled 2003 mortgage debt—and why all those debts that predate the 2006 mortgage debt discussed on the record— appear on Schedule F. If Debtor did not use the mortgage loans to pay off those debts, for what purpose did he use the loans?

In sum, the U.S. Trustee has not carried his burden of proving that Debtor's debts are primarily consumer debts. On that basis alone, the Court must deny the motion to dismiss[6]. Nevertheless, the Court will briefly address the other issues.

II. The 11 U.S.C. Section 707(b)(7) Safe Harbor Provision.

Debtor and his non-filing spouse were neither separated nor living separate and apart at the time Debtor commenced this case, meaning subparagraph (B) of section 707(b)(7) does not apply in this case. Therefore, the current monthly income of the

---

[6] Consistent with the written record and the testimony, the closing arguments were less than clear when it came to the primary nature of the debts. Arguably, one might infer that Debtor's attorney waived this issue, but this Court declines to overlook the status of the record on this issue.

non-filing spouse must be considered for the purpose of subparagraph (A) of that section.

The parties agree that the non-filing spouse's current monthly income is $3,708.30.[7]   With respect to Debtor's current monthly income, the U.S. Trustee contends it should be $3,003.47 but Debtor maintains it should be $2,527.64.  Even if the Court adopted Debtor's lower current monthly income figure, the safe harbor provision would not apply because multiplying the combined current monthly incomes by 12 results in a figure that exceeds $58,764.00,[8] the applicable median family income for Debtor's family of three.

III. The 11 U.S.C. Section 707(b)(2) Presumption of Abuse.

With respect to the U.S. Trustee's contention that a non-filing spouse's income and expenses must be taken into account for the purpose of the means-test, this Court has held the following in a docket text ruling regarding Form 22A:

> (3) Part IV (Calculation of Current Monthly Income for Section 707(b)(2)) of the form is at odds with section 101(10A) for the purpose of section 707(b)(2)(A) in a non-filing spouse case and ends up metamorphosing the section 707(b)(2) means-test into an 11 U.S.C. section 707(b)(3) bad faith filing or totality of the circumstances analysis. The form should direct a debtor to include the amount from Column A of line 11 (the current monthly income of the debtor for the purpose of that part of the form) on line 16 (the base line of Part IV) and add to that on line 17 (in lieu of the marital adjustment) the amounts the non-filing spouse paid on a regular basis for the household expenses of the debtor or the dependants of the debtor during the section 101(10A) current monthly income period. Then completion of Part V (Calculation of Deductions From Income) of the form should include the monthly expenses and debt payments of a debtor as allowed by section 707(b)(2)(A)(ii)-(iv) and should not include any monthly expenses and debt payments that are solely those of the non-filing spouse.

---

[7] Debtor did not include the non-filing spouse's income in his Form 22A.  (Docket Number 4.)  At the time of the hearing, Debtor submitted Exhibit 1, a revised Form 22A, that adopted the current monthly income figure the U.S. Trustee had included in Exhibit A-1 attached to the motion to dismiss.  (Docket Number 14.)

[8] [$3,708.30 + $ 2,527.64 = $6,235.94] x 12 = $74,831.28.

Matter of Burrell, No. 08-00898-lmj7 (Bankr. S.D. Iowa filed Oct. 1, 2010).

Hence, the U.S. Trustee's revised Form 22A that included the non-filing spouse's income and expenses and Debtor's revised Form 22A that attempted to take issue with some of the U.S. Trustee's figures are of no assistance in analyzing the means-test in this case. Furthermore, though the non-filing spouse testified that she pays the property taxes on their home, the electric bill and some of the food expense, she provided no dollar figures that the Court could use to perform the means test sua sponte. With respect to the their teenage son, the non-filing spouse testified that she pays for the son's car, sports equipment, extracurricular activities, school requirements and cell phone. Once again she provided no dollar figures.

IV. 11 U.S.C. Section 707(b)(3) Abuse Under a Bad Faith Filing Analysis.

Given this Court's Burrell holding, the U.S. Trustee's contention that Debtor's failure to include his non-filing spouse's income and marital adjustment on Form 22A is evidence of bad faith must fail.[9]

V. 11 U.S.C. Section 707(b)(3) Abuse Under a Totality of the Circumstances Analysis.

The U.S. Trustee's contention that Debtor has the ability to pay 86% of his general unsecured debt must also fail because the argument is premised on treating this case as if it were a joint filing. Though it might be appropriate to do so in some cases, this is not one of those cases. Both Debtor and his non-filing spouse credibly testified that they have always kept their finances totally separate over the many years they have been married. Neither one has access to or check writing authority for the other's checking account. Each is solely responsible for his or her own secured and

---

[9] Though Debtor should have included his non-filing spouse's current monthly income in Part II (Calculation of Monthly Income for § 707(b)(7) Exclusion) of Form 22A, the Court attributes the failure to do so to general confusion over the proper way to complete the form.

unsecured debts.    Though the home equity loans may have been joint debts, the non-filing spouse considered those to be the responsibility of the debtor.    Given she alone paid off the original home mortgage debt in fifteen years and without information about what amount of the home equity loan or loans went to home improvements as opposed to payment of Debtor's business debts, the Court is unable to determine what amount of payment the non-filling spouse might be expected to assume for her half of the enjoyment of any home improvement.    In any event, it is unlikely such amount would turn Debtor's $649.37 negative monthly income into a significantly positive number.[10]

CONCLUSION

Wherefore, for the reasons set forth in this Memorandum of Decision, the U.S. Trustee's 11 U.S.C. section 707(b)(1) motion to dismiss must be denied.

A separate Order shall be entered accordingly.

/s/ Lee M. Jackwig
LEE M. JACKWIG
U.S. BANKRUPTCY JUDGE

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Chapter 7 Case

---

[10] On Schedule I (Current Income of Individual Debtor(s)), Debtor indicated his net monthly income from driving a truck for Roland Transport, Inc. was $1,261.63.  At the time of the hearing, Debtor suggested his income had decreased due to less overtime.   On Schedule J (Current Expenditures of Individual Debtor(s)), Debtor indicated his average monthly expenses totaled $1,911.00.  That included $546.00 for the home equity loan.  At the time of the hearing, L. Todd Vandenberg, the U.S. Trustee's Bankruptcy Analyst for the Southern District of Iowa, testified that the loan amount would be increasing to $616.05.